[No. C067807. Third Dist. Nov. 4, 2011.]

In re CHRISTOPHER EFSTATHIOU on Habeas Corpus.

726

## COUNSEL

Michael Satris, under appointment by the Court of Appeal, for Petitioner Christopher Efstathiou.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Jessica N. Blonien and Henry J. Valle, Deputy Attorneys General, for Respondent The People.

## OPINION

**BUTZ, J.**—This case concerns a constitutional challenge to an amendment of Penal Code section 2933.6. (Pen. Code, § 2933.6, subd. (a); hereafter, section 2933.6(a) or the section 2933.6(a) amendment.)[1] That amendment, effective January 25, 2010, makes prison gang members, who are placed in an administrative segregation unit upon validation, ineligible to earn sentence reduction conduct credits during such placement.

Through a petition for writ of habeas corpus, petitioner Christopher Efstathiou challenges this amendment on ex post facto and procedural due process grounds.[2]

We shall deny the petition. As for ex post facto, the amendment does not apply retrospectively to petitioner. As for procedural due process, the determination that petitioner has chosen to remain an active prison gang member was supported by the applicable legal standard of "some evidence."

### FACTUAL AND PROCEDURAL BACKGROUND

In 1999, the Department of Corrections and Rehabilitation (the Department) validated petitioner as a member of the Nazi Low Riders (NLR) prison gang. On January 5, 2006, the Department again validated petitioner as an NLR member. In 2009, petitioner was paroled but returned to prison in late 2009 after pleading guilty to a commercial burglary.

Upon his 2009 return to state prison, petitioner was initially reviewed by the Department's institutional classification committee (the Department's ICC or the ICC) and placed in an administrative segregation unit (ASU) on November 25, 2009, as he was "claiming to be an NLR Prison Gang Member."

---

[1] Undesignated statutory references are to the Penal Code.

[2] Petitioner also claimed the amendment violated his First Amendment right to associate, but he has apparently abandoned that claim in the petition process.

Effective January 25, 2010, section 2933.6(a), regarding sentence reduction conduct credits, was amended to read (relevant amendment is italicized below): "(a) Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) [(subd. (b) lists various violent offenses such as murder, rape, and assault, as well as escape, hostage taking, and riotous property destruction)] *or upon validation as a prison gang member or associate* is ineligible to earn [sentence reduction conduct] credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct." (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 44.)

Prior to this amendment, it was apparently possible for validated prison gang members placed in an ASU to earn conduct credits totaling one-third of their sentences. (See *In re Sampson* (2011) 197 Cal.App.4th 1234, 1237–1238 [130 Cal.Rptr.3d 39].)

Following its November 2009 initial review placing petitioner in ASU, and after the section 2933.6(a) amendment became effective, the Department's ICC concluded on February 4, 2010, in a special review of petitioner: "Due to [petitioner] being a validated Member of the Nazi Low Riders, per 128-B-2 [(validation form)] dated 1/5/06, [petitioner] is ineligible to earn [conduct] credits pursuant to [Penal Code section] 2933 or . . . 2933.[0]5. [Petitioner] is being reviewed by [the] ICC for the sole purpose of changing the work group/privilege group in accordance with the changes in legislation. Therefore, based upon a review of the CDC-114D [(the Department file)], case factors, and thorough discussion with [petitioner], [the ICC] elects to: RETAIN ASU DUE TO BEING A VALIDATED MEMBER OF THE NLR . . . ."

Petitioner seeks a writ of habeas corpus, claiming that the January 25, 2010 amendment to section 2933.6(a) is unconstitutional on ex post facto and procedural due process grounds.

On May 12, 2011, we issued to the Department an order to show cause why the writ should not be granted. As a result, we received formal briefing from the Attorney General and from petitioner.

Our review of these two constitutional issues is de novo, i.e., independent. (See *People v. Cromer* (2001) 24 Cal.4th 889, 893–894 [103 Cal.Rptr.2d 23, 15 P.3d 243].)

## DISCUSSION

### I. Section 2933.6(a) Amendment Does Not Violate Ex Post Facto Prohibition

■ For a criminal law to be ex post facto, (1) it must be *retrospective*, that is, it must apply to events occurring before its enactment, and (2) it must *disadvantage* the offender affected by it; that is, it must alter the definition of criminal conduct or increase the punishment for a crime. (*Weaver v. Graham* (1981) 450 U.S. 24, 29 [67 L.Ed.2d 17, 23, 101 S.Ct. 960] (*Weaver*); *California Dept. of Corrections v. Morales* (1995) 514 U.S. 499, 506 & fn. 3 [131 L.Ed.2d 588, 595 & fn. 3, 115 S.Ct. 1597]; *Lynce v. Mathis* (1997) 519 U.S. 433, 441 [137 L.Ed.2d 63, 72, 117 S.Ct. 891].) We conclude that the section 2933.6(a) amendment has not been applied retrospectively to petitioner, and therefore does not run afoul of the state and federal constitutional principles prohibiting ex post facto laws.[3]

"The critical question [for retrospective purposes] is whether the law changes the legal consequences of acts completed before its effective date." (*Weaver, supra,* 450 U.S. at p. 31 [67 L.Ed.2d at p. 24].)

In helping us decide that question here, we are fortunate to have two bedrock decisions that serve as opposing guideposts—one from the highest court in the land (*Weaver, supra,* 450 U.S. 24 [67 L.Ed.2d 17]) and the other from the highest court in our state (*In re Ramirez* (1985) 39 Cal.3d 931 [218 Cal.Rptr. 324, 705 P.2d 897]).

In *Weaver*, the United States Supreme Court invalidated on ex post facto grounds a new state statute which reduced the amount of sentence reduction conduct credits a prisoner could earn, when that statute was applied to a particular inmate who committed his crime before the statute was enacted. Critically, in *Weaver*, the inmate's credits were reduced through no fault of his own; the statute simply reduced the credits he could earn for good behavior, starting on the date of its enactment. The *Weaver* court concluded the statute was retrospective because it changed the "legal consequences" of crimes committed before its effective date and was part of the inmate's "punitive conditions" even though not technically part of his sentence. (*Weaver, supra,* 450 U.S. at pp. 31–33 [67 L.Ed.2d at pp. 24–25].)

In contrast to *Weaver* stands *Ramirez*. In *Ramirez*, the California Supreme Court found a statutory amendment was not retrospective and therefore did

---

[3] California Constitution, article I, section 9; United States Constitution, article I, section 10, clause 1.

not violate the ex post facto principle. The statutory amendment at issue in *Ramirez* increased the number of sentence reduction credits that could be forfeited for prison misbehavior. (*In re Ramirez, supra*, 39 Cal.3d at pp. 932–933.) The amendment was applied to an inmate who committed his criminal offense, for which he was imprisoned, before the effective date of the amendment.

*Ramirez* distinguished *Weaver* as follows: "There is a critical difference between a diminution of the ordinary rewards for satisfactory performance of a prison sentence—the issue in *Weaver*—and an increase in sanctions for *future misbehavior* in prison—which is at issue here. Here, [unlike in *Weaver*,] petitioner's opportunity to earn good behavior and participation credits is unchanged. All that has changed are the sanctions for prison misconduct. Unlike *Weaver*, petitioner's effective sentence is not altered by the [statutory amendment] unless petitioner, by his own action, chooses to alter his sentence." (*In re Ramirez, supra*, 39 Cal.3d at p. 937.)

The ex post facto issue here reduces to whether the section 2933.6(a) amendment falls on the *Weaver* side of the ledger or on the *Ramirez* side. As we shall explain, we look to *Ramirez* as our guidepost, and conclude the section 2933.6(a) amendment is not an ex post facto law because it does not apply retrospectively to petitioner.

The evidence in the record shows that petitioner (1) was "validated" as an NLR prison gang member in 1999; (2) was so "validated" once again in January 2006 on seven bases (when only three were required (Cal. Code Regs., tit. 15, § 3378, subd. (c)(2), (3)); (3) "claim[ed]" to be such a member in late November 2009 when he returned to prison, leading to his placement in ASU; and (4) engaged in a "thorough discussion" with the Department's ICC in February 2010 (at which the § 2933.6(a) amendment was the focus), but did not disabuse the ICC of his continuing active membership in the NLR. "The 'validation' of a [prison] gang member involves no more and no less than [the Department's] recognition of at least three reliable, documented bases ('independent source items') for concluding that an inmate's background, person, and/or belongings indicate his or her *active* association with other validated gang members or associates, and at least one of those bases constitutes a direct link to a current or former validated gang member or associate." (*In re Sampson, supra*, 197 Cal.App.4th at p. 1242, italics added; see *In re Furnace* (2010) 185 Cal.App.4th 649, 657–658 [110 Cal.Rptr.3d 820]; Cal. Code Regs., tit. 15, §§ 3378, subd. (c)(2), (3), (8), 3321.)

 This evidence shows that petitioner has chosen to continue to be an active member of the NLR prison gang while he is incarcerated in prison—a choice that has continued after the January 25, 2010 effective date of the

section 2933.6(a) amendment. Furthermore, this choice has necessitated a placement in ASU. In short, then, petitioner's choice to continue to be an active member of a prison gang, which has necessitated his placement in ASU, is the equivalent of continuing to engage in misconduct in prison. And since petitioner has chosen to engage in this conduct on and after the January 25, 2010 effective date of the section 2933.6(a) amendment, the amendment may be applied to deny him sentence reduction credits—for such misconduct from that date—without violating ex post facto principles, because the amendment is not being applied retrospectively to him. A law is retrospective if it applies to events occurring *before* its enactment. (*Weaver, supra,* 450 U.S. at p. 29 [67 L.Ed.2d at p. 23].) With respect to petitioner, the section 2933.6(a) amendment applies to events occurring *after* its enactment. (See *In re Ramirez, supra,* 39 Cal.3d at pp. 936–937.)[4]

Thus, the section 2933.6(a) amendment is akin to the statutory increase in sentence credit forfeitures for "*future misbehavior* in prison" found constitutional on ex post facto grounds in *Ramirez.* (*In re Ramirez, supra,* 39 Cal.3d at p. 937.) *Ramirez*'s remark about the petitioner there applies equally to petitioner here: "Unlike *Weaver,* petitioner[] [*Ramirez*'s] effective sentence is not altered by the [challenged statutory increase in credit forfeitures] unless petitioner [Ramirez], by his own action, chooses to alter his sentence." (*In re Ramirez,* at p. 937.) By choosing to continue to be an active member of the NLR prison gang after the effective date of the section 2933.6(a) amendment, petitioner here has chosen to alter his sentence.

Petitioner counters that any alteration to his sentence is not based on any finding of misconduct on his part, but rather on a finding as to his mere *status.* Again, though, it is difficult to argue that choosing to be an active prison gang member while in prison is not prison misconduct. As for status, NLR membership is not some condition or affliction over which petitioner has no control; it is a conscious choice, a volitional act. Petitioner may choose to end his active prison gang membership and placement in segregated housing through one of two formal routes: (1) he becomes an "inactive" gang member after six years of noninvolvement in gang activity; or (2) he completes the "debriefing process," demonstrating that he has dropped out of the gang. (Cal. Code Regs., tit. 15, §§ 3341.5, subd. (c)(2)(A)1, 3378, subd. (e), 3378.1, respectively; see *In re Sampson, supra,* 197 Cal.App.4th at p. 1243.)[5]

---

[4] To make clear, the section 2933.6(a) amendment applies only to petitioner's conduct on and after January 25, 2010, the amendment's effective date; the amendment has no effect on conduct credits earned before that date.

[5] *Sampson* hints at a third route to make the section 2933.6(a) amendment inapplicable: the periodic, 180-day review by the ICC of the status of a segregatively housed, validated gang

In the recent decision in *Sampson*, the Court of Appeal, First Appellate District, Division One, rejected a habeas corpus petitioner's claim there, similar to petitioner's claim here, that although he (petitioner Sampson) continued to be a validated prison gang member in administrative segregation, he " 'did nothing' " after January 25, 2010, to bring himself within the ambit of the section 2933.6(a) amendment. (*In re Sampson, supra*, 197 Cal.App.4th at p. 1242.) The *Sampson* court disagreed with Sampson's claim that he " 'did nothing,' " noting, in part, that Sampson aborted the gang debriefing process after January 25, 2010. (*Sampson*, at pp. 1242–1243, citing & quoting *In re E.J.* (2010) 47 Cal.4th 1258, 1280 [104 Cal.Rptr.3d 165, 223 P.3d 31] [which rejected an ex post facto challenge to new residency restrictions applicable to registered sex offender parolees; " '[t]he new residency restrictions appl[ied] to events occurring *after* their effective date—[registrants'] acts of taking up residency in noncompliant housing upon their release from custody on parole after the statute's effective date' "]; see also *Sampson*, at pp. 1239, 1244.)

Admittedly, the high court in *Weaver* noted—in concluding that the statute there reducing earnable conduct credits operated retrospectively to a sentence imposed before the statute's effective date—"that a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the [trial] judge's calculation of the sentence to be imposed." (*Weaver, supra*, 450 U.S. at p. 32 [67 L.Ed.2d at p. 25].) Petitioner claims that a "significant factor" in entering his plea was the understanding that he would earn one-third conduct credits against his sentence, as validated prison gang members in an ASU apparently could do prior to the section 2933.6(a) amendment. (See *In re Sampson, supra*, 197 Cal.App.4th at pp. 1237–1238.) However, in light of our prior analysis, we, like the court in *Ramirez*, "reject the notion that the sanctions for possible *future* prison misconduct constitute a 'significant factor' for either the trial judge or [the petitioner]." (*In re Ramirez, supra*, 39 Cal.3d at p. 938, italics added.) There is a plain incongruity between continuing by choice to be an active member of a prison gang while incarcerated in prison (necessitating segregated housing), and continuing to earn good conduct credits. All we can say is that for those active prison gang members who did so choose and earn before the section 2933.6(a) amendment became effective, they were beneficiaries of the incongruity. Let us not forget what ultimately is at issue here: a prison inmate's ability to earn sentence reduction credits *for good behavior* in prison.

We conclude that the section 2933.6(a) amendment does not violate ex post facto principles as applied to petitioner.

---

member results in his release to the general inmate population. (*In re Sampson, supra*, 197 Cal.App.4th at p. 1243.) However, the inmate's role in this route is unclear.

## II. Section 2933.6(a) Amendment Does Not Violate Procedural Due Process Here

In a cryptic argument based on procedural due process, petitioner claims that applying the section 2933.6(a) amendment to him "effectively deprived him of the ability to reduce his term through good behavior and entirely deprived him of his right to earn conduct credits, a right that the Legislature had granted him at the time of his offense. Thus, deprivation of that 'legislatively granted . . . right[] to conduct credit' was one that 'invokes due process guaranties.' [Citation.] [¶] [Petitioner] is entitled to due process protections that ensure that the decision to classify him as a validated gang member was not arbitrary by requiring that 'some evidence' support the decision to validate him. [Citation.] The procedure used to validate [petitioner], however, did not comport with due process protections because it did not satisfy the 'some evidence' standard." (Citing *Superintendent v. Hill* (1985) 472 U.S. 445, 454 [86 L.Ed.2d 356, 364, 105 S.Ct. 2768] [which held that revocation of previously earned good conduct sentence credits for prison misconduct does not comport with procedural due process unless the findings of the prison disciplinary board are supported "by some evidence in the record"].)

Our response is threefold.

■ First, as noted, choosing to be an active prison gang member while in prison is not "good behavior," and petitioner may continue to earn conduct credits by choosing not to be such a member.

Second, as the Legislature has explicitly stated, good conduct "[c]redit is a privilege, not a right." (§§ 2933, subd. (c), 2933.05, subd. (b).)

Third, and finally, there is "some evidence" in the record to support the finding that petitioner has chosen to continue to be an active prison gang member while in prison (necessitating segregated housing) on and after the January 25, 2010 effective date of the section 2933.6(a) amendment, such that the amendment may be applied to deny him conduct credits from that point forward while this misconduct continues. As noted, the evidence in the record shows that petitioner (1) was "validated" as an NLR prison gang member in 1999; (2) was so "validated" once again in January 2006 on seven bases, when only three were needed (Cal. Code Regs., tit. 15, § 3378, subd. (c)(2), (3)); (3) "claim[ed]" to be such a member in late November 2009 when he returned to prison, leading to his placement in ASU; and (4) engaged in a "thorough discussion" with the Department's ICC in February 2010 (at which the § 2933.6(a) amendment was the focus), but did not disabuse the ICC of his continuing active membership in the NLR.

We conclude that applying the section 2933.6(a) amendment to petitioner did not violate procedural due process.

## DISPOSITION

The petition for writ of habeas corpus is denied.

Blease, Acting P. J., and Duarte, J., concurred.

A petition for a rehearing was denied November 22, 2011, and petitioner's petition for review by the Supreme Court was denied February 22, 2012, S198672.