[No. C070016. Third Dist. Jan. 16, 2013.]

In re ANGEL JULIAN FERNANDEZ on Habeas Corpus;

[No. C070075. Third Dist. Jan. 16, 2013.]

In re HUGO ENRIQUE SALDANA on Habeas Corpus.

**COUNSEL**

Angel Julian Fernandez, in pro. per.; Hugo Enrique Saldana, in pro. per.; and Michael Satris, under appointment by the Court of Appeal, for Petitioners Angel Julian Fernandez and Hugo Enrique Saldana.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Jessica N. Blonien, Krista L. Pollard and Stanton W. Lee, Deputy Attorneys General, for Respondent the People.

**OPINION**

**BLEASE, Acting P. J.**—These two petitions for writ of habeas corpus challenge separate gang validation decisions by California's Department of Corrections and Rehabilitation (CDCR) in which prison staff determined that petitioners, prison inmates Angel Julian Fernandez and Hugo Enrique Saldana, were active associates of the Northern Structure (NS) prison gang. Both decisions are premised on three sources of information used to establish petitioners' involvement with the gang, the minimum required under the applicable regulations. The deferential " 'some evidence' " standard governs our review of the evidence and whether it supports the validation decisions pursuant to the applicable regulations. (*In re Efstathiou* (2011) 200 Cal.App.4th 725, 733 [133 Cal.Rptr.3d 34] (*Efstathiou*); *In re Furnace* (2010) 185 Cal.App.4th 649, 659 [110 Cal.Rptr.3d 820] (*Furnace*).)

Petitioners claim the evidence is inadequate. Some of the sources of information include rosters listing various inmates and additional personal information. The rosters were discovered along with other gang-related documents in the possession of inmates other than petitioners. Other evidence includes debriefing reports by inmates who had been involved in the NS, as well as (in Fernandez's case) a disciplinary log, maintained by the NS to document infractions of NS rules, that was found in another inmate's possession.

Fernandez claims that the memorandum describing the roster of prison inmates did not adequately articulate why it could be inferred that it listed inmates who were involved in the NS. (See Cal. Code Regs., tit. 15, § 3378, subd. (c)(8)(C).)[1] However, our review of two other sources reveals that the roster does in fact include the names of other inmates who are involved with the NS. Further, our review indicates the other two sources are valid, independent evidentiary sources. We shall conclude that three adequate sources (including the roster) support the validation of Fernandez as a gang associate.

Saldana was validated based on two rosters, similar to the roster used in Fernandez's case, as well as a single additional source, the debriefing report of another inmate. Applying the deferential "some evidence" standard of judicial review, we shall reverse the decision in Saldana's case because the

---

[1] Further undesignated section references are to title 15 of the California Code of Regulations.

debriefing report does not support the decision. As we shall explain, the report does not satisfy the evidentiary requirement specified in the regulations that requires that a debriefing report refer to specific gang-related conduct. (See § 3378, subd. (c)(8)(M); see also § 3378, subd. (c)(8)(H).) Nor is there other evidence indicating how Saldana was actually involved with the NS.

Petitioners also raise related issues concerning the validation process and the use of confidential source material in the validation process.

We shall conclude that the validation process employed by CDCR complies with due process requirements and find no prejudicial error with respect to the limited disclosure of confidential source material.

## PROCEDURAL BACKGROUND

Both petitioners were validated as associates of the NS by CDCR in 2009. The evidence supporting the validation decisions will be summarized in the discussion portion of this opinion. The validation process included (1) notice of the source items that prison staff offered against them; (2) an interview and an opportunity to file a written response, which both petitioners did; and (3) notice of the subsequent gang validation decision explaining the basis for that decision. Petitioners challenged the respective validation decisions by administrative appeal. They were denied relief at each level of review and exhausted their administrative remedies.

Petitioners then sought relief by filing separate petitions for writ of habeas corpus in the superior court. The superior court initially denied both petitions without reviewing the confidential information that prison staff had relied upon in making the validation decisions. Each petitioner then filed his first petition for writ of habeas corpus in this court. In both cases, we obtained the confidential source information before issuing orders to show cause returnable in the superior court. (*In re Fernandez* (Mar. 24, 2011, C067013) [order to show cause issued]; *In re Saldana* (Apr. 7, 2011, C066975) [order to show cause issued].)

After the appointment of counsel and briefing, the superior court entered new decisions denying the petitions. In both cases, the superior court briefly stated it had reviewed the source information and concluded it satisfied the "some evidence" standard. The superior court also rejected related constitutional and procedural claims raised by the petitioners.

Petitioners then filed the current habeas corpus petitions in propria persona in this court. We obtained informal opposition from respondent in both cases. We then consolidated the two matters, directed issuance of an order to show cause returnable before this court, and appointed counsel to represent petitioners. Respondent subsequently filed a return, and petitioners' counsel filed a traverse.

## DISCUSSION

### I. Legal Background

#### A. *The Validation Decision Requirements*

A gang "associate" is described in the administrative regulations as "an inmate/parolee or any person who is involved periodically or regularly with members or associates of a gang." (§ 3378, subd. (c)(4).) A gang "member" is described as "an inmate/parolee or any person who has been accepted into membership by a gang." (§ 3378, subd. (c)(3).) The validation of either a gang member or associate requires the recognition of three reliable source items indicative of active association with the gang, and at least one of those sources must constitute a direct link to a current or former validated gang member or associate.[2] (See *Efstathiou, supra,* 200 Cal.App.4th at p. 730; see also §§ 3378, subd. (c)(2), (3), (4), (8), 3321.) We accord deference to CDCR's interpretation of the governing regulations in matters that fall within its expertise. (*In re Cabrera* (2012) 55 Cal.4th 683 [148 Cal.Rptr.3d 500, 287 P.3d 72] (*Cabrera*).) The current cases involve two different types of source items: (1) written material discovered by prison staff and (2) reports from debriefing inmates.

Written material may include "[a]ny material or documents evidencing gang activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs." (§ 3378, subd. (c)(8)(C).) When such material is used as a source of gang validation evidence, "[s]taff shall articulate why, based on either the explicit or coded content, the written material is reliable evidence of association or membership with the gang." (*Ibid.*)

---

[2] The language in the regulations defining a gang member and a gang associate to include "any person" was added by an amendment to the regulations in 2011 (after the gang validation decisions at issue here), but the quoted text was otherwise unchanged. (See § 3378, subd. (c)(3), (4), Register 2011, No. 22 (July 2, 2011).) Additionally, both regulations were also amended to state that the "direct link" requirement may be satisfied by linking an inmate to a person who is validated as a gang member or associate "within six (6) months of the established or estimated date of activity identified in the evidence considered." (*Ibid.*)

The next type of evidence comes from "debriefing" inmates who were involved with the prison gang. The regulation provides: "Only information referencing specific gang related acts or conduct shall be considered as a source item. Multiple sources of information relative to a single gang related offense or activity shall be considered a single source of validation." (§ 3378, subd. (c)(8)(M).)

A somewhat similar regulation applies when the source of information is an "informant," as opposed to (more specifically) a debriefed inmate. The regulation provides: "Staff shall articulate how the information specifically relates to the inmate's involvement with the gang as a member or associate. The information may be used as a source of validation if the informant provides specific knowledge of how he/she knew the inmate to be involved with the gang as a member or associate. Multiple confidential sources providing information regarding a single gang related incident or behavior shall constitute one (1) source item. Exclusive reliance on hearsay information provided by informants will not be used for validation purposes." (§ 3378, subd. (c)(8)(H).)

With respect to either written material or information provided by debriefed inmates and informants, the regulations anticipate the use of confidential information. All of the relevant regulations provide: "Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution." (§ 3378, subd. (c)(8)(C), (H), (M).) A standard confidential information disclosure form is prescribed for use in the process. (§ 3378, subd. (c)(6)(C).)

Information from a confidential source must "meet the test of reliability established in section 3321." (§ 3378, subd. (c)(2).) Under section 3321, "[n]o decision shall be based upon information from a confidential source, unless other documentation corroborates information from the source, or unless the circumstances surrounding the event and the documented reliability of the source satisfies the decision maker(s) that the information is true." (§ 3321, subd. (b)(1).) Section 3321 also describes specific criteria that are used to establish a confidential source's reliability: "(1) The confidential source has previously provided information which proved to be true. [¶] (2) Other confidential source . . . independently provided the same information. [¶] (3) The information provided by the confidential source is self-incriminating. [¶] (4) Part of the information provided is corroborated through investigation or by information provided by non-confidential sources. [¶] (5) The confidential source is the victim." (§ 3321, subd. (c).)

## B. *Due Process and Some Evidence Standard*

Petitioners claim prison staff violated their due process rights because they lacked adequate evidentiary support for the gang validation decisions at issue pursuant to the "some evidence" standard. Petitioners complain that the decisions are otherwise arbitrary and do not comport with the relevant regulations. Respondent does not dispute that due process compels court review pursuant to the "some evidence" standard, but respondent also correctly observes that the standard is deferential.

The "some evidence" standard is the constitutional test that applies to court review of certain prison administrative decisions, including the gang validation decisions at issue here as well as other decisions such as parole or prison discipline affecting an inmate's credits. (*Furnace, supra*, 185 Cal.App.4th at p. 659; see *Superintendent v. Hill* (1985) 472 U.S. 445, 454 [86 L.Ed.2d 356, 364, 105 S.Ct. 2768]; *Efstathiou, supra*, 200 Cal.App.4th at p. 733.) In applying that standard in the gang validation context, the court must still consider whether the requisite findings have been established consistent with the administrative regulations. There must be three independent sources of evidence supporting the gang validation decision, at least one of which provides direct evidence of gang activity. (Cf. *Furnace, supra*, at pp. 659–663 [reviewing gang validation decision]; see *Efstathiou, supra*, at p. 730; *In re Sampson* (2011) 197 Cal.App.4th 1234, 1242–1243 [130 Cal.Rptr.3d 39].)

Court review of a gang validation decision, like review of other administrative decisions by prison staff, is nevertheless deferential. "The existence of a nonincriminating explanation for a source item . . . is irrelevant to this court's 'some evidence' review. Neither is it appropriate for this court to weigh conflicting evidence." (*Furnace, supra*, 185 Cal.App.4th at p. 663.) "The issue is simply whether the evidence in question permits a court to conclude that the administrator had reasons for his or her decision." (*Id.* at p. 659.) Nevertheless, the state Supreme Court has cautioned in applying the some evidence standard in the related administrative context of parole decisions that the decision "must be supported by some *evidence*, not merely by a hunch or intuition." (*In re Lawrence* (2008) 44 Cal.4th 1181, 1213 [82 Cal.Rptr.3d 169, 190 P.3d 535].)

## II.   Fernandez's Validation Decision

Three sources supported the validation decision in the case of Fernandez, all of them based on confidential information summarized in confidential

information disclosure forms provided to Fernandez.[3] The underlying confidential memoranda have been filed in this court under seal. Except as otherwise noted, the factual summary is derived from the information disclosed to Fernandez. Prison staff determined that each of the source items was also evidence of a "direct link" to a gang member or associate.

## A. Disciplinary Log May 15, 2009 Memo

The first source item that we will consider is written material described as a "disciplinary log" that was discovered in the possession of a validated NS member. The log included "Fernandez's name and an account of an infringement of [NS] guidelines or policies . . . ." Prison staff asserted that the source item was reliable because "[t]he information was not intended for staff viewing and was corroborated through staff investigation."

Later, in connection with the petition for writ of habeas corpus, respondent submitted additional information in a declaration by Officer B. Fleming, a longtime employee of CDCR who has been an assistant institutional gang investigator for over three years. Officer Fleming explained: "The disciplinary log recovered identifies Fernandez by name, alias, and CDCR inmate number. The log indicates that because Fernandez failed to carry out his duties as a Section Channel of the [NS], Fernandez was assigned a writing assignment with a due date. This information is indicative of Fernandez's current involvement and association with the [NS] because it not only identifies Fernandez's position within the gang (Section Channel), but the fact that he was disciplined for violating gang guidelines." Officer Fleming also noted that the reliability and evidentiary value of the disciplinary log is bolstered by the fact that it was uncovered along with other NS documents from the rectum of an inmate during contraband watch.

Petitioner Fernandez suggests that the confidential information disclosure form contains less information than could reasonably have been disclosed. The original confidential information disclosure form contained a fairly conclusory description of the disciplinary log, which nevertheless indicated it was written material documenting discipline imposed by the gang for perceived infractions. Fernandez complains that further disclosure was necessary to allow him to respond and to establish the reliability of this source.

██ Substantial discretion must be given to prison staff to determine what information may safely be disclosed to the inmate. As previously noted, the governing regulations require prison staff to "document and disclose this

---

[3] A fourth source was submitted based on Fernandez's tattoos but was found inadequate and not used to support his validation as a gang associate.

information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution." (§ 3378, subd. (c)(8)(C).) Considering that the disciplinary log was discovered in the possession of a validated NS gang member, he could face punitive action by the gang for not preventing prison staff from discovering the log. Describing the log in great detail could, conceivably, also subject other inmates to retaliation.

We recognize that Officer Fleming has disclosed some additional information concerning the discipline imposed. Even assuming that more information might reasonably have been disclosed in the first instance to Fernandez, we conclude any error was harmless considering the court's review of the source material. From our independent review of the confidential source evidence, we conclude it is, quite simply, exactly what prison staff says it is: a disciplinary log that unequivocally states that Fernandez was disciplined by the gang for matters connected with his involvement in the gang. The context in which it was discovered further establishes its reliability. We do not see any conceivable way in which Fernandez could demonstrate that the log is not a reliable source item supporting his gang validation decision.

Fernandez also complains that this source item does not disclose gang activity by him or establish a direct link to a gang member or associate. We need not directly address the "direct link" requirement because we conclude that the debriefing report (discussed next) satisfies it. We otherwise conclude the disciplinary log is reliable evidence demonstrating both association and involvement with the NS. (See § 3378, subd. (c)(8)(C).)

B.   *Debriefing Report June 17, 2009 Memo*

Another source item used in the validation decision is a debriefing report by a validated member of the NS. The gang member "identified inmate Fernandez as a member of the [NS] functioning as the Section Channel in Building 2 on Facility C while housed at High Desert State Prison." Prison staff claimed the source item was reliable because the source incriminated himself/herself in criminal activity when providing the information, more than one source had independently provided the same information, and some of it had been corroborated through staff investigation.

Fernandez complains there was no showing that the report was reliable and based on firsthand information, as opposed to hearsay. Further, he complains that there is no indication from the disclosure form that specific acts connected with him were identified or that there was a direct link connecting him to a specific gang member or associate.

We have reviewed the confidential source material itself and concluded pursuant to the "some evidence" standard that it is a reliable and valid source item and that it satisfies the "direct link" requirement.

## C. *Roster June 19, 2009 Memo*

The third source item is a roster taken from a suspected NS member who was subsequently validated as a gang member. The roster contained information, including "Fernandez's name, CDCR #, AKA, Tier Name, City of residence, reason in prison, and EPRD [(earliest possible release date)]." Prison staff asserted it was reliable because "[t]he information was not intended for staff viewing and was corroborated through staff investigation."

Our review of the sealed confidential material reveals the following additional facts. Prison staff described the roster as a list of "suspected [NS] members/associates and Northern Hispanics at least sympathetic to the [NS] prison gang ideology." There is no attempt to specify which inmates listed in the roster had been identified as being involved in the NS. Further, the roster itself does not contain any specific information identifying it as a gang roster. It simply lists inmates' names along with additional personal information.

Officer Fleming characterizes the roster of inmates as "a gang roster that identified members and associates of the [NS], including Fernandez, by name, CDCR inmate number, alias, tier name, city of residence, commitment offense, and earliest parole release date." Officer Fleming explains: "The appearance of Fernandez's information on the gang roster is indicative of [NS] association and active participation in [NS] activities because rosters like the one recovered are maintained by the [NS] as a method of identifying current members and associates of the gang. The information in the roster allows the gang to specifically identify an inmate so that members and associates are aware of the other members and associates of the prison gang. To avoid any confusion between inmates, the roster identifies the member and associate by multiple identifying factors. By keeping current rosters, gang members and associates know who they can trust with gang information, orders, and who can be used as a conduit for passing gang communications. The fact that the roster was kept with and recovered with other [NS] documents further evidences that the roster relates to [NS] gang activities and that the inmates listed on the roster are actively associating with the [NS]. Additionally, because the roster was recovered from the rectum of the inmate that was on contraband watch, the documents were clearly not intended for CDCR [officials'] discovery, furthering the reliability of the information recovered."

Fernandez complains that this evidence does not establish a direct link to a current or former gang member, a point we need not specifically address in

light of our conclusion the debriefing report satisfied that requirement. Counsel makes some additional points concerning the use of these types of rosters in arguing the Saldana case. Counsel observes that "[a] roster is but a list of names and identifying information that allows inmates to 'know who they can trust' and does not contain any information about specific gang-related acts." According to counsel: "Inclusion on such a 'laundry list' does not permit it to be used as a source item in the gang validation process against the inmate named, as opposed to the inmate found with the list."

Preliminarily, we observe that counsel overstates the showing that must be made with respect to this type of written material. It is reasonable to infer that a gang roster is used to facilitate communication within the gang, and the use of written material is not circumscribed by the need for the material itself to show *specific* gang acts. The regulation refers to "[a]ny material or documents evidencing gang activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs." (§ 3378, subd. (c)(8)(C).) Staff must only articulate that "the written material is reliable evidence of association or membership with the gang." (*Ibid.*) These requirements differ from limitations placed on the use of debriefing of inmates, where "[o]nly information referencing specific gang related acts or conduct shall be considered as a source item." (§ 3378, subd. (c)(8)(M).) If prison officials uncover a roster describing inmates involved with the gang, we conclude that such a roster is consistent with the relevant evidentiary requirements. Such a roster is a valid source item evidencing an inmate's gang association and broadly supporting an inference that the inmate is involved in gang activity notwithstanding the lack of information with respect to specific acts or conduct.

The issue here is whether the roster in the current case is in fact a roster of inmates involved with the NS as opposed to a roster maintained for some other purpose. Counsel's argument was obviously hampered by the fact that petitioners have not been provided with the confidential source material itself. The context does of course provide "some evidence" from which to infer that the roster listing Fernandez is a gang-related document. But prison staff did not, in describing the roster itself, seek to demonstrate that a certain number of other inmates on the list had been validated as gang members or associates or had been involved with any gang activities. This fact is most acutely revealed in the confidential memorandum itself, in which the gang investigator opined in each case that these were inmates who were "at least sympathetic" to the NS. In the absence of actual evidence, the most that can be said is that the NS had collected personal information concerning inmates.

Under the circumstances, it does not appear that prison staff faithfully complied with the administrative regulation requiring them to "articulate

why, based on either the explicit or coded content, the written material is reliable evidence of association or membership with the gang." (§ 3378, subd. (c)(8)(C).) That does not, however, end our inquiry. We must consider the context in which there was other evidence presented to support the validation decision.

Prison staff has asserted and continues to assert that the roster is reliable evidence of Fernandez's involvement with the NS. We have reviewed the other source material and conclude that it corroborates this assertion. Specifically, the debriefing report and the disciplinary list (taken together) indicate at least 60 percent of the persons listed on the roster (including Fernandez) were identified by the other sources as having been actively involved with the NS. Under the some evidence standard, we find this to be sufficient to support the use of the roster as a valid source item. (Cf. § 3378, subd. (c)(8)(C) [various types of written material, including membership lists, may be considered].)

██ We recognize that the source items must be "independent." (§ 3378, subd. (c)(4).) But this requirement has been met in the sense that each source concerns evidence uncovered by prison staff at a different time and in a different context. This is not a case in which, for example, a debriefing inmate described a petitioner as being involved in a gang and provided documentation purportedly relating to the petitioner's gang involvement. The "independence" of the source items in such a context would be in question, and there would be a real danger of facilitating an attempt by the gang to leak false information to target its enemies. In the current case, the other source evidence merely corroborates the prison officials' claim that the rosters are in fact *evidence of gang involvement* as opposed to rosters maintained by the NS for other purposes. (Cf. *Furnace, supra*, 185 Cal.App.4th at p. 662 [court may consider "interplay" of source items to establish " 'direct link' " criteria despite the requirement that source items be independent].)

### III.   Saldana's Validation Decision

Like Fernandez, Saldana was validated based on the required minimum of three sources, all based on confidential information that prison staff determined met the validation requirements. Two of the sources were rosters similar to the one used in Fernandez's case, which listed inmates (including Saldana) and included personal identifying information. The focus of our analysis, however, is on the other source of information used to validate Saldana: a debriefing report of a validated NS member. We note that prison staff determined that each of the three sources provided evidence of a "direct link" to a gang member or associate.

The confidential information disclosure form states that the gang member "identified Subject by aka (Juice), tier name (Flaco) and Hometown (Lindsay)"

and "stated that Subject was an associate of the [NS]." Prison staff asserted the source item was reliable because the source incriminated himself/herself in criminal activity when providing the information, more than one source had independently provided the same information, and some of it had been corroborated through investigation or by information from nonconfidential sources.

Saldana complains that the debriefing report, as described in the confidential information disclosure form, does not show he participated in any identified gang activity and that there is no evidence satisfying the direct link requirement. Saldana describes the report as suggesting that his name had simply been included as one of "a laundry list" provided by the debriefed inmate.

■ We have reviewed the confidential source material itself and concluded that it is inadequate. As previously noted, use of a debriefing report is limited by the clear and unequivocal evidentiary requirement that "[o]nly information referencing specific gang related acts or conduct shall be considered as a source item."[4] (§ 3378, subd. (c)(8)(M).) ■ Here, the debriefed inmate failed to describe the nature of Saldana's involvement with the gang, other than simply describing him as an "associate." Not only are no specific acts or incidents involving Saldana mentioned, but there is likewise no mention of him serving a particular role or job for the gang (as there is in Fernandez's case). Further, the confidential material does not otherwise describe how Saldana interacted with NS members or was otherwise involved with the NS. Consequently, even assuming the required showing may be made by inference, there is no way to make the required inference. "Some evidence" does not support the decision.[5]

---

[4] Under the more general rule governing the use of informants, there is a requirement that staff "articulate how the information specifically relates to the inmate's involvement with the gang as a member or associate." (§ 3378, subd. (c)(8)(H).)

On oral argument the Attorney General argued the "specific gang related acts" language of section 3378, subdivision (c)(8)(M), refers to "the inmate's involvement with the gang as a member or associate" in subdivision (c)(8)(H).

We disagree. The language of section 3378, subdivision (c)(8)(M), is clear and, unlike subdivision (c)(8)(H), applicable only to debriefing reports.

[5] The state Supreme Court recently considered the meaning of the "direct link" requirement in a case in which the court held that the Court of Appeal had erred in requiring evidence of a reciprocal (mutual or two-way) interaction. (*Cabrera, supra*, 55 Cal.4th at p. 690.) The Supreme Court concluded the Court of Appeal failed to accord CDCR sufficient deference in interpreting the regulation to permit evidence of unilateral conduct by the inmate. (*Id.* at pp. 690–692.) In so holding, the Supreme Court observed that CDCR offered an interpretation of the "direct link" requirement that was not clearly unreasonable and that "nothing in the plain language of section 3378 requires proof the inmate formed a reciprocal or mutual relationship with a validated gang affiliate in order to establish a direct link . . . ." (*Id.* at p. 691.) *Cabrera* is inapposite to the current matters except to the extent it informs our review of the "direct

Under the circumstances, we need not discuss in detail the other source items submitted in Saldana's case, which were rosters similar to the roster used in Fernandez's case. We simply observe that the rosters, like the debriefing report, provide no additional evidence concerning the specific nature of Saldana's involvement in the NS. Even if the rosters could be used as independent sources, there would be only two valid sources to support the gang validation decision in Saldana's case. Under the circumstances, there is insufficient evidence to validate Saldana as a gang associate. (See § 3378, subd. (c)(4).)

Having concluded the decision must be reversed, it is necessary to address the remedy. Saldana claims "this Court should void the decision . . . to validate Saldana and order the [CDCR] to release him to the main population and otherwise classify him in accordance with due process." Respondent claims, "the proper remedy is to vacate the gang [validation] and allow the [CDCR] the opportunity to review any information suggesting gang association and housing status . . . ." In support, respondent cites a case addressing the remedy for an erroneous parole decision. In that case, the state Supreme Court explained "that a decision granting habeas corpus relief in these circumstances generally should direct the Board to conduct a new parole-suitability hearing in accordance with due process of law and consistent with the decision of the court, and should not place improper limitations on the type of evidence the Board is statutorily obligated to consider." (*In re Prather* (2010) 50 Cal.4th 238, 244 [112 Cal.Rptr.3d 291, 234 P.3d 541].)

■ The current case involves a different type of determination than a parole hearing, which is held periodically to determine based on multiple factors whether an inmate should be released. The gang validation procedure is instead initiated by the submission of evidence indicating an inmate (or other individual) is an active gang member or associate. We have determined that the evidence in Saldana's case is inadequate. Under the circumstances, the appropriate remedy is to attempt, as closely as possible, to return Saldana to the position he would enjoy if the gang validation had been unsuccessful. We shall vacate the gang validation decision and direct prison officials to expunge it from Saldana's prison file and to cease housing him based on the gang validation. At the same time, our decision does not preclude prison

link" requirement and otherwise holds that we must accord deference to CDCR's interpretation of its own regulation in matters of its expertise. As noted above, we conclude that Saldana's gang validation decision is inconsistent with the clear and unequivocal language of the regulation promulgated by CDCR, which provides the source at issue is valid only if it includes "information referencing specific gang related acts or conduct." (§ 3378, subd. (c)(8)(M).)

officials from prospectively initiating a new validation procedure if they have learned of *additional* evidence that satisfies the gang validation criteria.

## IV.   Other Claims

Both petitioners originally filed their petitions in propria persona, but counsel was appointed after this court issued the orders to show cause. Counsel's traverse in the case focuses on the adequacy of the evidence supporting the validation decisions, the issue we discuss in this opinion. In the original propria persona petitions, petitioners also raised some additional issues concerning petitioners' procedural rights. We shall briefly address these related issues that challenge the validity of the validation process.[6]

Although the propria persona petitions are not a model of clarity, both petitioners complain that the prescribed gang validation procedures provide insufficient protection for their due process rights. Fernandez notes that he was one of a large group of inmates who were validated about the same time. He more specifically asserts that procedural due process requires a balancing of interests and cites to the United States Supreme Court decision in *Wolff v. McDonnell* (1974) 418 U.S. 539 [41 L.Ed.2d 935, 94 S.Ct. 2963] (*Wolff*), as well as a state appellate court decision, *Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048 [114 Cal.Rptr.2d 798]. Both petitioners also claim the current validation system permits guilt to be established in an attenuated fashion, by association, and that the standards for gang validation are inadequate. We conclude the procedure employed in gang validation cases comports with due process.

It is true that the validation of an inmate as a gang member or associate, like a prison disciplinary decision, can implicate the inmate's credits, thereby affecting the inmate's sentence, as well as significantly affecting his housing assignment and other conditions of confinement. (See § 3341.5, subd. (c); Pen. Code, § 2933.6, subd. (a); see also *Efstathiou, supra,* 200 Cal.App.4th at p. 732; *In re Sampson, supra,* 197 Cal.App.4th at pp. 1240–1244.) In the prison disciplinary context, the United States Supreme Court has referred to an inmate's right to "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional

---

[6] We decline to address an equal protection claim raised by Saldana because that claim raises issues concerning the specific validation decision in his case, which we have already found to be unsupported by adequate evidence. Likewise, it is unnecessary to specifically address the issues Saldana raises concerning how the gang validation process has affected his assignment to prison housing.

safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." (*Superintendent v. Hill, supra*, 472 U.S. at p. 454 [86 L.Ed.2d at p. 364], citing *Wolff, supra*, 418 U.S. at pp. 563–567 [41 L.Ed.2d at pp. 955–958].) Additionally, as already explained, there must be "some evidence" to support the decision. (*Superintendent*, at p. 454.)

The gang validation process adequately comports with these rights. Inmates are afforded individualized consideration, and the regulations provide ample protection against an arbitrary deprivation of an inmate's rights. Prison officials must establish, based on the evidence submitted, that an inmate is actively involved with a prison gang as a member or associate. (See *Efstathiou, supra*, 200 Cal.App.4th at p. 730.) Here, petitioners had advance notice of the charges and were able to prepare and submit their own written responses. (Cf. *Wolff, supra*, 418 U.S. at pp. 566, 570 [41 L.Ed.2d at pp. 956–957, 959].) Petitioners were provided with the reasons for the validation decisions, including summaries of the evidence used to validate them as gang members. When necessary, as here, courts may obtain and review the confidential source material used in a validation decision.

It is true that the validation process does not encompass calling witnesses. But, as noted, the United States Supreme Court has indicated this is not required if institutional safety and correctional goals would be unduly jeopardized. Here, the context is prison gangs and institutional safety where the calling of witnesses, at a minimum, is problematic, given both the security concerns and confidential nature of the material used in the validation process. (See *Wolff, supra*, 418 U.S. at p. 566 [41 L.Ed.2d at pp. 956–957].) As also noted by the Supreme Court: "Prison security, imperiled by the brutal reality of prison gangs, provides the backdrop of the State's interest [in the level of due process to afford]. Clandestine, organized, fueled by race-based hostility, and committed to fear and violence as a means of disciplining their own members and their rivals, gangs seek nothing less than to control prison life and to extend their power outside prison walls." (*Wilkinson v. Austin* (2005) 545 U.S. 209, 227 [162 L.Ed.2d 174, 192–193, 125 S.Ct. 2384].)

Thus, we conclude that the failure to provide for witnesses is consistent with the United States Supreme Court's determination that procedural protections less demanding than those required by *Wolff* may be employed "[w]here

the [proceeding at issue] draws more on the experience of prison administrators, and where the State's [due process] interest implicates the safety of other inmates and prison personnel . . . ." (*Wilkinson v. Austin, supra,* 545 U.S. at pp. 228–229 [162 L.Ed.2d at p. 193].)

Petitioner Fernandez also suggests that an inmate's validation as a gang member is a virtually irrevocable "status-based decision." Fernandez has not established any violation of his due process rights based on the consequences of the gang validation decisions at issue here. As noted by this court in a prior decision, an inmate "may choose to end his active prison gang membership and placement in segregated housing through one of two formal routes: (1) he becomes an 'inactive' gang member after six years of noninvolvement in gang activity; or (2) he completes the 'debriefing process,' demonstrating that he has dropped out of the gang."[7] (*Efstathiou, supra,* 200 Cal.App.4th at p. 731.)

## SUMMARY

■ We issue this opinion in part to provide guidance for future cases. We emphasize that prison staff must establish three independent sources of evidence that meet the requirements of the governing regulations. Our review of the evidence is, however, highly deferential pursuant to the some evidence standard. With particular respect to the use of rosters, prison staff may rely on other relevant evidence (even if from another "independent" source) to show that a roster evidences an inmate's involvement in a gang. It would facilitate court review of gang validation decisions (and faithfully comply with the prison regulations) for the gang validation packet itself to disclose which inmates listed in a roster have been identified by other evidence as being involved with a prison gang. (See § 3378, subd. (c)(8)(C).)

## DISPOSITION

The petition for writ of habeas corpus in *In re Fernandez,* case No. C070016, is denied. The petition for writ of habeas corpus in *In re Saldana,* case No. C070075, is granted and California's Department of Corrections and Rehabilitation (CDCR) is directed to vacate Saldana's 2009 gang validation decision, which established that Saldana was an associate of the Northern Structure (NS) gang. CDCR is further directed to (1) report the expungement of Saldana's 2009 validation to all gang-related law

---

[7] This court also noted that a prior appellate court case "hints at a third route . . . the periodic, 180-day review by the ICC [(institutional classification committee)] of the status of a segregatively housed, validated gang member results in his release to the general inmate population." (*Efstathiou, supra,* at pp. 731–732, fn. 5.) But this court observed that "the inmate's role in this route is unclear." (*Id.* at p. 732, fn. 5.)

enforcement databases and clearinghouses to which the original validation was reported previously, and (2) cease housing Saldana based on the 2009 gang validation.

Butz, J., and Duarte, J., concurred.

Petitioners' petition for review by the Supreme Court was denied April 10, 2013, S208677.