**Joseph Scott HUNTER, Petitioner–Appellee,**

v.

**Robert L. AYERS, Warden, Respondent–Appellant.**

No. 01–17557.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 13, 2002 *.

Filed July 18, 2003.

---

23. 335 F.3d 1009.

24. *Id.*

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

David A. Carrasco, Deputy Attorney General of the State of California, Sacramento, CA, for the appellant.

Joseph Scott Hunter, Corcoran, CA, appearing pro se.

Before KOZINSKI and KLEINFELD, Circuit Judges, and REED,** District Judge.

## OPINION

KLEINFELD, Circuit Judge.

The sole issue in this case is whether a change in California parole regulations was unconstitutionally retroactive. The district court concluded that it was, and we agree.

### Facts

Hunter had been convicted of rape and related serious crimes and began serving a 39–year sentence in 1981. Prisoners in most penal systems get "good time," which means time deducted from their term of incarceration for good behavior. They lose good time for misconduct. This system gives prisons a disciplinary tool, especially for offenses too minor to merit additional criminal prosecution. Hunter's good time, not his 39–year sentence, is the subject of this case.

Hunter got caught drinking "pruno" on February 22, 1996. Pruno is a fermented drink made by prisoners from scraps of fruit and vegetables. After a hearing, he was assessed 120 days of good time. This assessment meant that he would have had to spend four months more of his underlying 39–year sentence in prison before his release. Under the prison regulations in place when Hunter committed his infraction, he was entitled to get a portion of this good time back after a period of good behavior. But a prior change in the statute governing the good time system and a

designation.

** The Honorable Edward C. Reed, Senior United States District Judge for Nevada, sitting by

subsequent change in prison regulations removed his right to restoration of his lost good time. He objects that this change violated the ex post facto clause of the United States Constitution.

## Analysis

The issue in the case is whether changes in the prison regulations around the time of the pruno offense make the penalty an ex post facto punishment.

Long before Hunter committed the pruno infraction, California law gave the Director of the Department of Corrections authority to issue regulations for restoration of previously forfeited good time.[1] Essentially, this allowed prisoners who had lost good time through an infraction to behave themselves for some period of time and get back part or all of the time they were assessed for their infraction. This provided an additional device for getting inmates to behave. Even though prisoners had lost good time for misconduct, the prison authorities could give back the lost good time to a prisoner who followed the rules for a long enough period after an infraction.

Before it was amended in 1995 the statute at issue here required the Director of the Department of Corrections to issue regulations that would restore forfeited good time, upon various conditions.[2] The statute said that "upon application of the prisoner and following completion of the required time free of disciplinary offenses, forfeited credits ... *shall* be restored unless...." [3] It is undisputed that Hunter did not fall within the "unless" exceptions. For Hunter the pre–1995 law meant that restoration of forfeited good time for offenses such as possession of pruno was mandatory, not discretionary.

As required by the statute, the regulations in place when Hunter committed his infraction made restoration of good time automatic and mandatory[4] if the inmate applied and met objective qualifications.[5] For an inmate who had forfeited good time for a Division B or C offense, such as Hunter's pruno offense, he could apply for restoration of 50 percent of any credit forfeited after he had "remained disciplinary free for six months." [6] These regulations were in place when Hunter committed his pruno violation. Thus, Hunter was entitled to restoration of 60 of the 120 days of forfeited good time, because he remained discipline free for six months after the infraction.

However, before Hunter's pruno infraction, the California legislature amended the good time credit statute. Under the amendment, inmates who committed "serious disciplinary infractions," which Hunter's pruno infraction was, no longer had an absolute entitlement to restoration of forfeited good time. Instead, the Director of the Department of Corrections had discre-

---

**1.** *See* Cal.Penal Code § 2933(c).

**2.** *See* Cal.Penal Code § 2933(c). "Under regulations adopted by the Department of Corrections, which shall require a period of not more than one year free of disciplinary infractions, worktime credit which has been previously forfeited may be restored by the director. The regulations shall provide for separate classifications of serious disciplinary infractions as they relate to restoration of credits, the time period required before forfeited credits or a portion thereof may be restored, and the percentage of forfeited credits that may be restored for these time periods." *Id.*

**3.** *Id.* (emphasis added).

**4.** Cal.Code of Regs. tit. 15, § 3327(e) (1995) ("Credit *shall* be restored at the consideration hearing ....") (emphasis added).

**5.** *See id.* at §§ 3327(d), 3328.

**6.** *Id.* at § 3328(c).

tion whether or not to provide for such restoration by regulation. The statute in existence prior to Hunter's offense had been amended in two material respects. First, the "forfeited credits ... shall be restored" provision was qualified by insertion of the phrase "for disciplinary offenses other than serious disciplinary infractions punishable by a credit loss of more than 90 days." [7] That meant that prisoners who committed "serious" infractions, such as Hunter, were no longer entitled by statute to restoration of forfeited credits.

The second statutory change, prior to Hunter's infraction, was a new sentence giving the Director complete. discretion over restoration of credits assessed for the "serious" infractions deleted from the automatic restoration sentence. The new sentence says, "However, in any case in which worktime credit was forfeited for a serious disciplinary infraction punishable by a credit loss of more than 90 days, restoration of credit shall be at the discretion of the director." [8]

Thus, the amended statutory scheme provided that after a long enough period of good behavior following the infraction, absent extraordinary circumstances, restoration of forfeited credits was to remain as a matter of right for non-serious infractions. But the director was given discretion over

the restoration of credits for serious infractions, like Hunter's.

Here is where we reach the arguable issue in this case. The 1995 statutory amendments became effective January 1, 1996, and Hunter committed the pruno offense February 22, 1996. But as of February 22, the director had not yet adopted new regulations to implement the new statutory provisions. The old regulations remained in effect.[9] And, under the regulations in effect when Hunter committed his pruno infraction, 50 percent of good time credits forfeited for such "serious" infractions as Hunter's Division C offense "shall be restored" if the prisoner who applied "has remained disciplinary free for six months." [10]

In April, after Hunter's offense and after Hunter's infraction hearing in March, the Director issued new regulations that eliminated restoration of forfeited good time credits for the more serious infractions. The new regulation provides that "[n]o credit shall be restored for any serious disciplinary offense punishable by a credit loss of more than 90 days. These offenses include Divisions A–1, A–2, B and C." [11] Under this harsher regime, Hunter would not be entitled to get 60 days of his forfeited 120 days of good time restored for his pruno offense, despite his subsequent six months of good behavior.

**7.** *See* Cal.Penal Code § 2933(c) & Historical and Statutory Notes discussing the 1995 amendment. Following the amendment this portion of the statute reads "[u]pon application of the prisoner and following completion of the required time period free of disciplinary offenses, forfeited credits eligible for restoration under the regulations *for disciplinary offenses other than serious disciplinary infractions punishable by a credit loss of more than 90 days* shall be restored ...." (emphasis added to indicate language added by amendment).

**8.** *Id.* The new sentence says, "However, in any case in which worktime credit was for-

feited for a serious disciplinary infraction punishable by a credit loss of more than 90 days, restoration of credit shall be at the discretion of the director."

**9.** *See* discussion p. 1012–1013, *infra*.

**10.** Cal.Code Regs. tit. 15, §§ 3327(e), 3328(c) (1995). An exception that existed for inmates less than six months from their release date has no application here. *See id.* § 3328(c).

**11.** Cal.Code of Regs. tit. 15, § 3327(a)(1) (1996). This regulation remains in effect.

It is plain that the amended 1995 statute gave the Director discretion to deal more harshly with restoration for forfeited good time for more serious infractions. And in April 1996, he did so, by issuing new regulations. The problem for the State in this case is that, as of February, he hadn't.

By the time Hunter had completed his six months of good behavior and applied for restoration of 50 percent of his forfeited good time, the post-infraction regulation was in effect. Pursuant to it, he was denied restoration of any of his forfeited good time.

Hunter asserted in his petition for a writ of habeas corpus in the district court, and asserts here, that the application of the post-infraction regulation against him constituted a violation of the Ex Post Facto Clause of the United States Constitution. The district court agreed and granted the writ.

We review de novo the district court's decision to grant a 28 U.S.C. § 2241 habeas petition,[12] and we review de novo whether a sentence violates the constitutional prohibition against ex post facto laws.[13]

The Constitution prohibits the States from passing any "ex post facto Law."[14] A law is an ex post facto law if it meets two conditions. First, "it must apply to events occurring before its enactment."[15] In other words, it must be retrospective. Second, it " 'must disadvantage the offender affected by it,' . . . by altering the definition of criminal conduct or increasing the punishment for the crime."[16] The ex post facto prohibition applies in the context of prison credits awarded towards a prisoner's early release. Applying the clause to the prison credit context, the Supreme Court held in *Weaver v. Graham* that where a prisoner's good time is reduced, the core question for ex post facto purposes is whether the changed law imposes "punishment more severe than the punishment assigned by law when the act to be punished occurred."[17] And, in *Lynce v. Mathis*, the Court held that cancellation of "provisional credits awarded as a result of prison overcrowding"[18] violated the ex post facto clause because it had the effect of "prolong[ing] . . . imprisonment."[19]

We conclude that these two cases control the case at bar. The punishment for the pruno offense became much more severe under the new regulation because after the new regulation went into effect, Hunter lost the right to have 60 days of lost good time credit restored. Applying the new regulations therefore disadvantaged Hunter and had the effect of prolonging his imprisonment. Moreover, the new regulation applied retrospectively to Hunter's already completed infraction. True, the regulation could have been issued, and the Director could have made the punishment more severe, as soon as the amendments to the statute came into effect, before the pruno offense. But he

12. *Angulo–Dominguez v. Ashcroft*, 290 F.3d 1147, 1149 (9th Cir.2002).

13. *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir.1997).

14. U.S. Const. art. I, § 10.

15. *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

16. *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (quoting

*Weaver*, 450 U.S. at 29, 101 S.Ct. 960, and citing *Collins v. Youngblood*, 497 U.S. 37, 50, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)).

17. *Weaver*, 450 U.S. at 30, 101 S.Ct. 960.

18. *Lynce*, 519 U.S. at 436, 117 S.Ct. 891 (internal quotation marks omitted).

19. *Id.* at 447, 117 S.Ct. 891.

didn't. The old regulation remained in effect until after the pruno offense, so Hunter was entitled to be punished under the old regulations.

If restoration of good time credits had been discretionary before and after the offense, this would be a different case. A "speculative and attenuated possibility" of increasing an inmate's punishment is insufficient to violate the ex post facto clause.[20] Likewise, it would be a different case if the restoration of credit had been discretionary before and unavailable afterwards. Here, though, Hunter did not have merely a speculative possibility of restoration of his good time credits when he committed the offense. He had a right, under the regulations then in effect, to have 50 percent of his good time credits restored if he behaved himself for six months after the pruno offense. This was a limitation on the severity of his punishment. Under the Ex Post Facto Clause, the limitation on his punishment could not be taken away after the offense.

■ The State relies on *In re Winner*,[21] which held that the regulation on which Hunter relies was rendered invalid by the 1995 amendment to the statute. *Winner* reasoned that the regulation did not survive the 1995 amendments because the revised statute and the regulation conflict.[22] If *Winner* were right, the statute would, of course, trump, but we do not believe that there was, in fact, a conflict. The revised statute does not prohibit restoration of good time; rather, it permits it, at the discretion of the Director.[23] The regulation, for its part, exercised the Director's discretion in a manner permitted by the revised statute: it provided for restoration of half the good time credits to all prisoners who behaved themselves for six months.[24] Contrary to *Winner's* conclusion, there was no inconsistency between the amended statute and the former regulation.

Although *Winner* does not say so, perhaps the court of appeal there believed that the amended statute empowered the Director to exercise his discretion only on a case-by-case basis, rather than wholesale by way of regulation. But the Director, who is charged with administering the statute, must interpret it otherwise because, subsequent to the 1995 amendment, he promulgated a regulation that denies restoration of good time credits for all serious infractions.[25] We see no basis for rejecting the Director's reasonable interpretation of the statute as authorizing the exercise of discretion by way of regulation. If the statute supports a blanket rule *denying* all good time credit restoration, then it surely also supported a blanket rule *granting* restoration in a certain class of cases.

We do not lightly reject the view of an intermediate state appellate court on a question of state law, but our responsibility is to decide the case as would the California Supreme Court.[26] For the reasons expressed, we are convinced that the California Supreme Court, if confronted

**20.** *California Department of Corrections v. Morales,* 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). *See also Hallmark v. Johnson,* 118 F.3d 1073, 1078–79 (5th Cir. 1997).

**21.** 56 Cal.App.4th 1481, 66 Cal.Rptr.2d 333 (1997).

**22.** *Id.* at 336–37.

**23.** *See* Cal.Penal Code § 2933(c).

**24.** Cal.Code Regs. tit. 15, §§ 3327(e), 3328(c) (1995).

**25.** *See* Cal.Code Regs. tit. 15 § 3327(a)(1) (1996).

**26.** *See Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986).

with the issue, would hold that the 1995 amendments did not render the pre-existing regulation invalid.

Because the pre-existing regulation remained in effect at the time of Hunter's infraction, the State's application of the new regulation to deny him restoration of credits violated the Ex Post Facto Clause.

AFFIRMED.