[No. A130582. First Dist., Div. One. June 30, 2011.]

In re TCINQUE SAMPSON on Habeas Corpus.

COUNSEL

L. Richard Braucher, under appointment by the Court of Appeal, for Petitioner Tcinque Sampson.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Julie L. Garland, Assistant Attorney General, Anya M. Binsacca and Claudia H. Phillips, Deputy Attorneys General, for Respondent Warden Greg Lewis.

OPINION

MARCHIANO, P. J.—

## INTRODUCTION

Petitioner Tcinque Sampson, an inmate of Pelican Bay State Prison, was validated as a prison gang member prior to January 25, 2010, and placed in a security housing unit (SHU). Effective January 25, 2010, an amendment to Penal Code section 2933.6[1] denies conduct credits to inmates, like petitioner, who are validated gang members placed in a SHU. Sampson filed a petition for writ of habeas corpus to regain his conduct credits on the ground that the application of the amended statute to him violated the ex post facto clauses of the federal and state Constitutions. The superior court agreed in part and gave petitioner nine months of conduct credit. California's Department of Corrections and Rehabilitation, through the warden of Pelican Bay Prison (Warden), appealed and we now reverse, because the statute is not retrospective in its application to petitioner.

## FACTUAL AND PROCEDURAL BACKGROUND

*Historical Facts*

On November 5, 2008, petitioner Tcinque Sampson was sentenced to state prison for two years eight months for grand theft. (§ 487, subd. (a).)[2] He was received by California's Department of Corrections and Rehabilitation (CDCR) on December 4, 2008. He was placed in administrative segregation as of that date because he was "known to be a Validated Member of the prison gang known as the 'BLACK GUERILLA FAMILY' (BGF) per

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] On September 1, 2009, he was also sentenced to serve a concurrent prison term of one year four months for identity theft. (§ 530.5, subd. (a).)

Institutional Gang Investigator (IGI), Officer G. Garrett."[3] (See Cal. Code Regs., tit. 15, § 3378.)[4] His earliest possible release date was calculated to be December 13, 2010.

On January 22, 2010, prison officials posted notices to inform inmates that, effective January 25, 2010, section 2933.6, subdivision (a) would make validated gang members ineligible to earn credits under section 2933 or 2933.05 as long as they are housed in a SHU.

On January 28, 2010, petitioner was informed in person that as a result of the prison's implementation of the amended statute, he would go from "1/3 credit earning status (D1) to zero credit earning status (D2) effective 1-25-2010." Petitioner disagreed with this action and appealed administratively, but his appeal was denied. Due to the loss of credits, petitioner's minimum adjusted release date was recalculated to be March 4, 2011. This date reflected retention of 104.25 days of credit earned prior to January 25, 2010.

---

[3] On April 6, 2009, petitioner's validation as an active member of the BGF (Black Guerilla Family) and his placement in a SHU was upheld on review.

[4] California Code of Regulations, title 15, section 3378 provides in pertinent part:

"(c) Gang involvement allegations shall be investigated by a gang coordinator/investigator or their designee.

"(1) . . . Current activity is defined as any documented gang activity within the past six (6) years consistent with section 3341.5(c)(5).

"(2) Information . . . shall be reviewed and verified by a gang investigator to ensure that the identification of an inmate/parolee as a currently active gang member or associate is supported by at least three independent source items in the inmate/parolee's central file. The independent source items must contain factual information or, if from a confidential source, meet the test of reliability established in section 3321. The verification of an inmate/parolee identified as a gang dropout shall require a formal debriefing conducted or supervised by a gang investigator.

"(3) A member is an inmate/parolee or any person who has been accepted into membership by a gang. This identification requires at least three (3) independent source items of documentation indicative of actual membership. Validation of an inmate/parolee or any person as a member of a prison gang shall require at least one (1) source item be a direct link to a current or former validated member or associate of the gang, or to an inmate/parolee or any person who is validated by the department within six (6) months of the established or estimated date of activity identified in the evidence considered. [¶] . . . [¶]

"(6) The verification of an inmate/parolee's gang identification shall be validated or rejected by the chief, office of correctional safety (OCS), or a designee. [¶] . . . [¶]

"(8) The determination of a gang identification shall reference each independent source item in the inmate/parolee's central file. The sources shall be based on the following criteria: [¶] (A) Self admission. . . . [¶] (B) Tattoos and symbols. . . . [¶] (C) Written material. . . . [¶] (D) Photographs. . . . [¶] (E) Staff information. . . . [¶] (F) Other agencies. . . . [¶] (G) Association. . . . [¶] (H) Informants. . . . [¶] (I) Offenses. . . . [¶] (J) Legal documents. . . . [¶] (K) Visitors. . . . [¶] (L) Communications. . . . [¶] (M) Debriefing reports. . . . [¶] . . . [¶]

"(e) An inmate housed in a security housing unit (SHU) as a gang member or associate may be considered for review of inactive status by the Department Review Board when the inmate has not been identified as having been involved in gang activity for a minimum of six (6) years. . . ."

On January 28, 2010, petitioner opted to "debrief." (See Cal. Code Regs., tit. 15, § 3378.1.)[5] Petitioner's request to debrief was witnessed by the chief deputy warden, who instructed the IGI (institutional gang investigator) to conduct a preliminary debriefing. By February 2010, prison officials confirmed receipt of petitioner's autobiography. In June 2010, petitioner was advised that prison officials had signed off on all of his paperwork and forwarded it to the next level in Sacramento. During a hearing with the chief deputy warden on September 23, 2010, petitioner inquired why his original release date had not been reinstated, given that he had submitted all of the information that had been requested of him with regard to debriefing. On September 29, 2010, petitioner was informed that he "was 'on the list' but the 'list' was very long and that is why it was taking so long." In early October 2010, petitioner advised prison officials that he "was no longer interested in debriefing because the institution had not honored its bargain with [him] to grant credits in exchange for debriefing . . . ."

*Habeas Corpus Proceedings*

On May 24, 2010, petitioner Sampson filed a pro se petition for writ of habeas corpus in Del Norte County Superior Court alleging that, as applied to him, the January 25, 2010 amendment to section 2933.6 violated the ex post facto clauses of the federal and state Constitutions because it punishes him retroactively for having been validated as a member of the BGF prior to January 25, 2010. He also asserted the statute denied him due process and equal protection. On June 11, 2010, the trial court issued an order to show cause and appointed counsel to represent petitioner.

On June 16, 2010, the Attorney General, on behalf of the Warden, filed a return to the order to show cause. On September 13, 2010, petitioner filed his denial. The court subsequently authorized funds for an expert witness declaration on the debriefing process. Petitioner filed a supplemental denial. The court received and filed declarations from expert witness Paul Dillard, a correctional consultant, and from petitioner Sampson, which it ordered sealed. According to Dillard, debriefing is a lengthy process that in some instances can take 19 months or longer.

On December 9, 2010, the trial court granted the writ of habeas corpus in part. The court ruled section 2933.6 is an ex post facto law as applied to gang members or associates who were validated as such before January 25, 2010,

---

[5] California Code of Regulations, title 15, section 3378.1, subdivision (a), defines debriefing as "the process by which a gang coordinator/investigator determines whether an inmate/parolee (subject) has dropped out of a gang. A subject shall be debriefed only upon his or her request, although staff may ask a subject if he or she wants to debrief. Debriefing shall entail a two-step process that includes an interview phase and an observation phase."

"because those inmates could not have completed the initial phase of the debriefing process and been restored to D-1 credit earning status until nine months after the statute's effective date." Therefore, the court restored petitioner's credits from January 25, 2010, through October 25, 2010, inclusive.

## DISCUSSION

Section 2933.6 provides in relevant part: "(a) Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) *or* upon validation as a prison gang member or associate is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct." (Italics added.) Subdivision (b) lists 14 offenses including, inter alia, murder, manslaughter, assault, rape, hostage taking, and arson. Subdivision (c) of section 2933.6 provides that the statute does not apply "if the administrative finding of the misconduct is overturned or if the person is criminally prosecuted for the misconduct and is found not guilty."

Both parties agree the amendment applies to petitioner because (1) he is housed in a SHU and (2) he is a validated gang member. However, the Warden asserts that section 2933.6 is not an ex post facto law as applied to petitioner because it operates prospectively only, in that it only applies to inmates housed in a SHU who remain active gang members after January 25, 2010. The Warden notes that petitioner did not retroactively forfeit any credits he had already earned. (See, e.g., *Lynce v. Mathis* (1997) 519 U.S. 433, 435–449 [137 L.Ed.2d 63, 117 S.Ct. 891] [law that retroactively cancelled already accumulated overcrowding credits was ex post facto].) The Warden also points out the conduct being punished by the amendment is petitioner's continued active affiliation with a prison gang, as evidenced by his failure to debrief after January 25, 2010. Thus, whether or not the statute affects his eligibility to earn credits is entirely within petitioner's control.

Petitioner argues the amendment operates retrospectively, and therefore violates the ex post facto clauses of the state and federal Constitutions, because the law "changes the legal consequences of acts completed before [the amendment's] effective date"—petitioner's validation as a gang member and assignment to a SHU—to his disadvantage. (*Weaver v. Graham* (1981) 450 U.S. 24, 30 [67 L.Ed.2d 17, 101 S.Ct. 960].) Further, it was impossible for petitioner to complete the process of debriefing before his previously determined release date. For the reasons discussed below, we disagree with petitioner's ex post facto analysis.

Preliminarily, we note, and the parties agree, that our review is independent or de novo. (*People v. Cromer* (2001) 24 Cal.4th 889, 894 [103 Cal.Rptr.2d 23, 15 P.3d 243].)

■ The ex post facto clauses of the federal and California Constitutions are analyzed identically. (*People v. McVickers* (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955].) ■ To offend the constitutional prohibition against ex post facto laws, a statute must do one of three things: " '[P]unish[] as a crime an act previously committed, which was innocent when done; . . . make[] more burdensome the punishment for a crime, after its commission, or . . . deprive[] one charged with crime of any defense available according to law at the time when the act was committed . . . .' " (*Collins v. Youngblood* (1990) 497 U.S. 37, 42 [111 L.Ed.2d 30, 110 S.Ct. 2715].) "After *Collins,* [*supra,* 497 U.S. 37,] the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." (*California Dept. of Corrections v. Morales* (1995) 514 U.S. 499, 506–507, fn. 3 [131 L.Ed.2d 588, 115 S.Ct. 1597], original italics.)

Assuming for the sake of argument that the amendment to section 2933.6 constitutes punishment,[6] we are not convinced that it punishes the criminal conduct for which petitioner was imprisoned, or that it punishes misconduct that occurred prior to January 25, 2010. As we explain, we find our Supreme Court's recent decision in *In re E.J.* (2010) 47 Cal.4th 1258 [104 Cal.Rptr.3d 165, 223 P.3d 31] (*E.J.*) illuminating on both issues.

In *E.J.,* four registered sex offender parolees challenged by way of a unified habeas corpus petition the residency restriction contained in section 3003.5, subdivision (b) on various constitutional and nonconstitutional grounds, including that application of the law to them violated the rule against retroactive application of a new law and the ban against ex post facto laws. In each case, the parolee-petitioner had been released from custody on parole after the effective date of the new law. (*E.J., supra,* 47 Cal.4th at p. 1264.) Our Supreme Court decided that section 3003.5, subdivision (b) operated prospectively because it applied only to sex offenders subject to lifetime registration who were paroled and who secured noncompliant housing after the statute's effective date. (*E.J.,* at pp. 1273–1274.) Put differently,

---

[6] We note that, with respect to the question whether the conduct-credit-enhancing January 25, 2010 amendment to section 4019 *lessens* punishment, the Courts of Appeal are divided. Our Supreme Court has granted review to resolve that question. (See, e.g., *People v. Brown* (2010) 182 Cal.App.4th 1354 [107 Cal.Rptr.3d 286], review granted June 9, 2010, S181963; *People v. Rodriguez* (2010) 183 Cal.App.4th 1 [107 Cal.Rptr.3d 460], review granted June 9, 2010, S181808.)

"[f]or purposes of retroactivity analysis, the pivotal 'last act or event' [citation] that must occur before the mandatory residency restrictions come into play is the registered sex offender's securing of a residence upon his release from custody on parole. If that 'last act or event' occurred subsequent to the effective date of section 3003.5(b), a conclusion that it was a violation of the registrant's parole does not constitute a 'retroactive' application of the statute." (*E.J.*, at p. 1274.) Since the statute was not being applied retroactively to the petitioners, section 3003.5, subdivision(b) also did not run afoul of the ban against ex post facto laws. (*E.J.*, at p. 1279.) "[T]he new residency restrictions apply to events occurring *after* their effective date—petitioners' acts of taking up residency in noncompliant housing upon their release from custody on parole after the statute's effective date. It follows that section 3003.5(b) is not an ex post facto law if applied to such conduct occurring after its effective date because it does not additionally punish for the sex offense conviction or convictions that originally gave rise to the parolee's status as a lifetime registrant under section 290." (*E.J.*, at p. 1280.)

By parity of reasoning, if the credit-eliminating amendment to section 2933.6 constitutes punishment, ex post facto principles do not bar its application to petitioner here, because it does not impose punishment for the offense that gave rise to petitioner's prison sentence. Rather, if it punishes, it punishes for conduct that occurred after the commission of, or the conviction for, the punishable offense. In other words, petitioner's ineligibility for conduct credit accrual is not punishment for the offense of which he was convicted. Nor is it punishment for gang-related conduct that occurred prior to January 25, 2010, since petitioner was not stripped of conduct credits he had already accrued. It is punishment for gang-related conduct that continued after January 25, 2010.

■ Petitioner maintains he "did nothing" after January 25, 2010, to bring himself within the ambit of the amended statute, but we see the matter differently. " 'Gangs, as defined in [California Code of Regulations, title 15] section 3000, present a serious threat to the safety and security of California prisons,' and '[i]nmates and parolees shall not knowingly promote, further or assist any gang as defined in section 3000.' " (*In re Furnace* (2010) 185 Cal.App.4th 649, 657 [110 Cal.Rptr.3d 820].) The "validation" of a gang member involves no more and no less than the CDCR's recognition of at least three reliable, documented bases ("independent source items") for concluding that an inmate's background, person, and/or belongings indicate his or her active association with other validated gang members or associates, and at least one of those bases constitutes a direct link to a current or former validated gang member or associate. (*Ibid.*; See Cal. Code Regs., tit. 15, §§ 3378, 3321.) For purposes of placement in a SHU, active gang membership or affiliation is considered "conduct [that] endangers the safety of others or the security of the institution" and "a validated prison gang member or

associate is deemed to be a severe threat to the safety of others or the security of the institution . . ." warranting an indeterminate SHU term. (Cal. Code Regs., tit. 15, § 3341.5, subd. (c) & (c)(2)(A)(2).)

Once "validated," an inmate's active membership or affiliation in the gang and placement in a SHU continues until one of three things happens: (1) the periodic, 180-day review of the inmate's status by the classification committee results in his or her release to the general inmate population (Cal. Code Regs., tit. 15, § 3341.5, subd. (c)(2)(A)(1)); or (2) he or she becomes eligible "for review of inactive [gang] status" after six years of noninvolvement in gang activity (Cal. Code Regs., tit. 15, § 3378, subd. (e)); or (3) he or she initiates and completes the "debriefing process," thereby demonstrating that he or she has dropped out of the gang (Cal. Code Regs., tit. 15, § 3378.1). Unless and until one of these three eventualities comes to pass, an inmate continues to engage in the misconduct that brings him or her within the amendment's ambit.

In this case, the trial court concluded the amended statute was an ex post facto law as applied to petitioner and other inmates who were validated as gang members and placed in a SHU prior to January 25, 2010, because it would take a minimum of nine months for such inmates to complete the first phase of debriefing that would result in their transfer out of a SHU. Therefore, the trial court ordered that nine months of lost credits, from January 25, 2010, through October 25, 2010, be restored to petitioner.

The trial court's order is erroneous for two reasons. First, petitioner initiated, but never completed, the debriefing process. By aborting the process, petitioner demonstrated that after January 25, 2010, he continued to associate with the BGF, continued to pose a threat to prison security, and continued to warrant housing in a SHU. Thus, petitioner was not entitled to relief even under the trial court's reasoning.

Second, there is no evidence that if petitioner had completed debriefing, he would have been denied credits after January 25, 2010. Because petitioner did not complete debriefing, CDCR was not required to do anything. The record is silent as to whether petitioner would have been awarded credits for the period of time that it took for him to successfully complete debriefing.[7] " '[S]peculative and attenuated possibilit[ies]' of increasing the measure of punishment do not implicate the *Ex Post Facto*

---

[7] We note, however, that section 2933.6, subdivision (c) provides the statute does not apply "if the administrative finding of the misconduct is overturned," suggesting that an inmate who demonstrates by debriefing that he has discontinued his active gang affiliation could have his credits restored by arguing that he had not been a gang member from the commencement of the debriefing process.

Clause . . . ." (*Lynce v. Mathis, supra,* 519 U.S. at p. 444, quoting *California Dept. of Corrections v. Morales, supra,* 514 U.S. at p. 509.) The trial court's order granting petitioner's writ of habeas corpus must be reversed.

## CONCLUSION

■ The amendment to section 2933.6 denying conduct credits to validated gang members housed in a SHU applies prospectively only to inmates who continue to demonstrate active gang affiliation after January 25, 2010, and therefore does not violate the prohibition against ex post facto laws.

## DISPOSITION

The order granting petitioner's writ of habeas corpus is reversed. The stay previously imposed shall remain in effect until issuance of the remittitur.

Margulies, J., and Banke, J., concurred.

On June 30, 2011, the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied November 2, 2011, S195508.