Filed 1/3/25  P. v. Vasquez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESUS ALFONSO BAUTISTA VASQUEZ,<br><br>    Defendant and Appellant. | D081820<br><br><br>(Super. Ct. No. SCN416061) |

APPEAL from a judgment of the Superior Court of San Diego County, Sim von Kalinowski, Judge.  Affirmed.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Andrew S. Mestman and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted Jesus Alfonso Bautista Vasquez of three counts of sexual penetration with a child under 10, nine counts of lewd acts upon a child under 14, and three counts of exhibiting pornography to a minor. He appeals from his convictions on three grounds: (1) the People presented insufficient evidence of force, duress, or fear regarding three of his lewd acts; (2) the People failed to prove whether the pornography counts occurred before or after a 2014 amendment to the statute for which the jury convicted him, resulting in improper jury instructions and violating the prohibition against ex post facto laws; and (3) his 135-year-to-life sentence for nine lewd acts is cruel and unusual, and his trial counsel was ineffective for failing to object on that ground. Concluding that none of these claims warrant reversal, we affirm the judgment.

# II. BACKGROUND

J.M., D.M., and M.H., are Vasquez's nieces. In 2013 and 2014 they lived together in the same duplex. During this time, J.M. was between eight and 10 years old, and D.M. and M.H. were between four and six years old. J.M., D.M., and their parents shared one side of the duplex with Vasquez, his wife, and their two children. Each adult couple slept in one of the home's two bedrooms, while the children slept in the garage. The girls' parents left early in the morning for work, and Vasquez was responsible for taking them to school. M.H. lived in the other side of the duplex with her parents and brother.

## A.    *Vasquez's Abuse of J.M.*

After their parents left for work, J.M. and D.M. would usually go into their parents' bedroom to continue sleeping. Shortly after going back to

2

sleep, approximately three to four times a week, Vasquez would go into that bedroom and close the door behind him. In each such instance, Vasquez showed J.M. pornography. Because Vasquez would tell her to watch it, J.M. felt she had no choice in the matter. Vasquez also touched his penis every time, pulling his shorts down to expose it. About two times a week, Vasquez grabbed J.M.'s hand around the wrist and made her grasp his penis and move it up and down. On two occasions, while Vasquez was carrying J.M. with her legs around his torso, he moved her body up and down and rubbed his penis against her genital area.

Between 5 and 10 times, Vasquez inserted his finger or a larger object into J.M.'s vagina, though more frequently he touched the outside of her vagina. To accomplish this, Vasquez would either remove J.M.'s clothes himself, or he would instruct her to do so. J.M. complied with those instructions, initially not knowing it was wrong. However, J.M. discovered Vasquez's actions were wrong after seeing D.M. and M.H.'s reaction when Vasquez exposed himself to all three of them; the abuse continued after that point.

D.M. remained in the bedroom sleeping while these assaults on J.M. occurred. D.M. awoke only once, causing Vasquez to scurry out of the room. Because of that reaction, J.M. unsuccessfully tried to wake up D.M. on another occasion to stop the discomfort she felt when Vasquez was pulling down her pants.

When Vasquez abused J.M., she obeyed him because he told her to, he was much bigger than she, and she felt like she could not say no. Vasquez also told her not to tell anyone, especially her parents. This made J.M. feel she could not disclose the abuse.

3

*B.      Vasquez's Abuse of M.H. and D.M.*

Vasquez acted similarly with his two younger nieces. He showed M.H. pornography multiple times when no other adults were around. He told M.H. the videos depicted acts in which her mom and dad engaged. Vasquez also forced M.H. to touch his penis behind a closed door in her parents' bedroom. He told her that milk comes out of it and that J.M. touches his penis too.

On numerous occasions, Vasquez carried D.M. to his bed, sat next to her, and showed her pornography. Vasquez did this when all the other adults were at work. D.M. stated that during one of those times, he touched her over her clothes in the general area of her vagina. D.M. also stated that Vasquez exposed himself to her many times and forced her to touch his penis on one occasion.

In 2022, the Office of the San Diego County District Attorney charged Vasquez with three counts of sexual penetration with J.M. (Pen. Code,[1] § 288.7, subd. (b); counts 1–3), three counts of forceable lewd acts for touching the outside of J.M.'s vagina (§ 288, subd. (b)(1); counts 4–6), three counts of forceable lewd acts for making J.M. touch his penis (§ 288, subd. (b)(1); counts 7–9), three counts of forceable lewd acts for rubbing J.M.'s body against his penis (§ 288, subd. (b)(1); counts 10–12), one forceable lewd act for touching D.M.'s vagina (§ 288, subd. (b)(1); count 14), one forceable lewd act for making M.H. touch his penis (§ 288, subd. (b)(1); count 16), and three counts of exhibiting harmful matter to a minor, one for each of the girls (§ 288.2, subd. (a); counts 13, 15, 17).

---

[1]      All undesignated section references are to the Penal Code.

Vasquez testified at his trial in 2022. He admitted showing J.M. pornography two or three times and touching her vagina with the palm of his hand three times. He denied all other allegations.

The jury found Vasquez guilty of all counts except 12 and 14. Jurors found Vasquez not guilty of count 12 and were unable to reach a verdict on count 14, resulting in a mistrial as to that count. The jury also found that all sexual penetration and lewd act counts involved substantial sexual contact (§ 1203.066, subd. (a)(8)), and all lewd act counts were committed against multiple victims (§ 667.61, subds. (b), (c)(4), (e)(4)).

In a bench trial, the court found these aggravating factors true: the offenses involved a high degree of callousness, Vasquez took advantage of a position of trust and confidence, each victim was particularly vulnerable, the offenses were carried out with planning, and Vasquez used harmful matter to induce a minor to engage in lewd acts (Cal. Rules of Court, rule 421(a)(1), (3), (8) & (11); § 1170.71).

The trial court sentenced Vasquez to prison for three years plus 180 years to life. The sentence consisted of a three-year term for count 15, two concurrent three-year terms for counts 13 and 17, and 12 consecutive 15-year-to-life terms for counts 1 through 11 and 16. Vasquez's timely appeal followed.

## III. DISCUSSION

### A.   *Sufficient Evidence Supported Conviction for Lewd Acts with Force, Fear or Duress (Counts 4–6)*

Counts 4 through 6 involved Vasquez touching the outside of J.M.'s vagina. Vasquez claims no evidence supports that he used any force greater than that necessary to accomplish these offenses. As for duress and fear, Vasquez relies on J.M.'s testimony that she would remove her clothing in

5

response to Vasquez's demands because she "didn't know it was wrong." He argues J.M.'s unawareness of wrongdoing differs from coercion by threat and does not amount to fear. The People contend there was sufficient evidence of duress. We agree.

### 1. Standard of Review

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Veale* (2008) 160 Cal.App.4th 40, 45.) Accordingly, the "defendant bears an enormous burden in claiming there is insufficient evidence to sustain his molestation convictions," and "[i]f the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves." (*Id.* at p. 46.)

### 2. Duress

A defendant who commits a lewd act on a child under 14 suffers additional punishment when the crime is committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim." (§ 288, subd. (b)(1).) " 'The very nature of duress is psychological coercion.' " (*People v. Barton* (2020) 56 Cal.App.5th 496, 518.) It is defined as " ' "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or,

6

(2) acquiesce in an act to which one otherwise would not have submitted." ' " (*People v. Soto* (2011) 51 Cal.4th 229, 246, italics omitted.)

To determine if the defendant used duress, we look at "[t]he totality of the circumstances includ[ing] the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072.)

For example, " '[d]uress can arise from . . . the relationship between the defendant and the victim and their relative ages and sizes. [Citations.] "Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" [are] relevant to the existence of duress.' " (*People v. Veale, supra,* 160 Cal.App.4th at p. 49.) Duress can also be shown by "a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 15.) Further, "[t]he fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress." (*People v. Thomas, supra,* 15 Cal.App.5th at p. 1072.)

### 3. Analysis

Vasquez continuously molested J.M. when she was between seven and nine years old. He was her adult uncle and an authority figure. The abuse occurred in their shared home after J.M.'s parents left for work, behind a closed door where the only other occupant was J.M.'s sleeping younger sister. J.M. felt weird, confused, uncomfortable, and eventually realized it was wrong. Vasquez told J.M. not to tell anyone, especially her parents, causing

J.M. to feel unable to disclose the abuse.  Vasquez also employed force in the unchallenged counts, making J.M. rub his penis and moving her body up and down against himself.

Though the jury received no evidence of explicit threats to J.M., and J.M. may not have initially known it was wrong to remove her clothes in response to Vasquez's demands, J.M. surrendered to Vasquez because he told her to, he was much bigger than she, and she believed she could not say no.  J.M. also attempted to wake up D.M. to interrupt the abuse, indicating she feared Vasquez and felt incapable of stopping him by herself.

Under these circumstances, J.M.'s initial ignorance of wrongdoing does not defeat a finding of duress.  Vasquez was a cohabitating adult family member, he continuously abused J.M. by isolating her and demanding her silence, he asserted physical control over J.M. in the unchallenged counts, and J.M. believed she could not deny Vasquez's advances because he was much bigger.  The jury could therefore reasonably infer that Vasquez impliedly threatened hardship or retribution to accomplish the acts in counts four through six.  Accordingly, there was sufficient evidence that Vasquez used duress in the challenged counts.

B.      *Any Error Regarding Exhibiting Harmful Matter to a Minor (Counts 13, 15, & 17) was Harmless*

Vasquez argues the prosecution alleged and proved that he violated section 288.2 between 2013 and 2015, but the People failed to establish whether specific counts fell prior to, or after, 2014.  He asserts that a 2014 amendment to section 288.2 expanded the crime's intent element because before 2014, the statute was limited to intending to engage in sexual intercourse or genital contact, while the newer version includes more intended acts.  Vasquez also contends the current statute is broader than the

8

former because it omits a seduction requirement. Vasquez therefore claims the trial court erred by only instructing the jury on the current version of section 288.2 because his crimes could have predated the 2014 amendment. For the same reasons, he claims his convictions under section 288.2 violate the prohibition on ex post facto laws.[2]

We agree the evidence does not establish whether Vasquez's offense occurred before or after the 2014 amendment to section 288.2. Nonetheless, any error in failing to instruct the jury on the prior law was harmless.

### 1. Standards of Review

We independently review instructional error and ex post facto claims. (*People v. Rivera* (2019) 7 Cal.5th 306, 326; *In re Sampson* (2011) 197 Cal.App.4th 1234, 1241.) Both claims are also subject to the *Chapman*[3] harmless error test. (*People v. Jensen* (2003) 114 Cal.App.4th 224, 241 (*Jensen*); *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1306.) Under that standard, the error is reversible unless "it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error." (*People v. Canizales* (2019) 7 Cal.5th 591, 615.)

---

[2] We address these claims despite the lack of an objection in the trial court. Vasquez contends the jury instructions incorrectly stated the law and affected his substantial rights, which are forfeiture exceptions. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 495, 499.) Additionally, an ex post facto claim may be raised on appeal without a prior objection when the evidence does not establish that the offense occurred after the effective date of the relevant statute. (*People v. Hiscox* (2006) 136 Cal.App.4th 253, 256.)

[3] *Chapman v. California* (1967) 386 U.S. 18.

## 2. 2014 Amendment of Section 288.2 and Corresponding Jury Instructions

Section 288.2 criminalizes showing pornography to a minor. (§ 288.2, subd. (a).) The required mental state for the offense has two elements; we focus on the second because that is the basis of Vasquez's claims.[4] In 2013, that second element required that the defendant act "with the intent or for the purpose of seducing a minor." (Former § 288.2, subd. (a)(1), amended by Stats. 2013, ch. 777, § 2.) Consistent with case law interpreting section 288.2's use of "seducing," the former version of CALCRIM No. 1140 described the second element, stating: "[t]o seduce a minor means to entice the minor to engage in a sexual act involving physical contact between the seducer and the minor." (Former CALCRIM No. 1140 (2013); see also *Jensen, supra,* 114 Cal.App.4th at pp. 239–240.)

Effective January 1, 2014, the Legislature modified section 288.2. (Stats. 2013, ch. 777, § 2.) Now one violates the law if he or she acted "with the intent or for the purposes of engaging in sexual intercourse, sodomy, or oral copulation with the other person, or with the intent that either person touch an intimate body part of the other." (§ 288.2, subd. (a)(1).) The amended statue also clarified that "an intimate body part includes the sexual organ, anus, groin, or buttocks of any person, or the breasts of a female." (§ 288.2, subd. (d).)

These statutory changes are reflected in the current version of CACLRIM No. 1140, which the court gave to Vasquez's jury. Specifically, the

---

[4] The first element is "the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of [the defendant] or of the minor." (§ 288.2, subd. (a)(1).) It received only a small nonsubstantive change in the 2014 amendment of section 288.2, and Vasquez does not challenge this element's application to his crimes.

judge instructed the jury that the People must prove "[w]hen the defendant acted, he intended to engage in sexual intercourse, sodomy, or oral copulation with the other person or to have either person touch an intimate body part of the other person." The trial court also told the jury an intimate body party "includes the sexual organ, anus, groin, or buttocks of any person, or the breasts of a female."

3. Analysis

We disagree that the 2014 amendment to section 288.2 added more intended acts to the offense. First, Vasquez is incorrect that the former version of section 288.2 was limited to sexual intercourse or genital contact. No such limitation is found in the earlier version of the statute, former CALCRIM No. 1140, or the governing case law. Instead, all that was required was an intent "to engage in a *sexual act involving physical contact* between the perpetrator and the minor." (*Jensen, supra,* 114 Cal.App.4th at p. 240, italics added.)

Additionally, when comparing the former and current versions of CALCRIM No. 1140, we see the current version is more descriptive. The former instruction broadly applied to intent "to engage in a sexual act involving physical contact between the seducer and the minor" without specifying which acts would qualify. (Former CALCRIM No. 1140 (2013).) The newer version is narrower, identifying the qualifying acts; however, we observe, "sexual intercourse, sodomy, or oral copulation with the other person or [having] either person touch an intimate body part of the other person," (CALCRIM No. 1140) all fall within the previous instruction's description of "a sexual act involving physical contact between the seducer and the minor" (Former CALCRIM No. 1140 (2013)).

11

Vasquez is correct, though, that CALCRIM No. 1140 no longer includes the words "seduce" or "entice." It merely requires that the defendant "intended to engage in" certain specified acts. (CALCRIM No. 1140.)

Ultimately, we need not decide whether the variations between the current and former statute are substantial enough to warrant an instruction under the former. Any error in that regard was harmless beyond a reasonable doubt.

J.M., said Vasquez forced her to touch his penis, Vasquez touched and penetrated her vagina, and Vasquez rubbed his penis on her "private parts" while carrying her. This abuse occurred frequently, with Vasquez showing J.M. pornography every time he sexually assaulted her. Vasquez also admitted that he showed J.M. pornography before he would touch her, that he did it because J.M. did not know what sexual touching was, and that he would touch her while the videos were on.

As for M.H., Vasquez showed her pornography multiple times when no other adults were present, telling her that her parents did what was depicted in the videos. Vasquez also forced M.H. to touch his penis.

Vasquez also repeatedly showed D.M. pornography. Vasquez played the videos while he and D.M. sat on his bed and no other adults were home. D.M. also testified that Vasquez exposed himself to her many times and forced her to touch his penis on one occasion, although the People did not charge Vasquez for those acts.

Considering all the evidence and the jury's findings, when Vasquez showed each victim pornography, he intended to entice them to engage in sexual acts involving physical contact.[5] In fact, there was no evidence of a

---

[5] The jury's acquittal on count 12 and inability to reach a verdict on count 14 do not change our analysis here.

12

contrary intent. Accordingly, we conclude the record supports that a rational jury would reach the same verdict absent any error regarding instructing on the 2014 amendment to section 288.2. We therefore affirm the convictions for counts 13, 15, and 17.

C.    *Vasquez's Punishment was Not Excessive (Counts 4–11 and 16)*

The trial court imposed consecutive 15-year-to-life sentences for each of Vasquez's lewd acts (counts 4–11 & 16), totaling 135 years to life. Vasquez argues this is effectively a life without parole sentence, amounting to a cruel and unusual punishment. He further claims he received ineffective assistance of counsel because his attorney failed to object on this ground in the trial court.

Vasquez forfeited his excessive punishment claim by failing to raise it in the trial court. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247.) We therefore review this issue through his claim of ineffective assistance of counsel. Vasquez fails to meet the requisite showing for reversal because he has not established that his trial counsel was prejudicially deficient.

1.    Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.)

2.    Cruel and Unusual Punishment

The federal Constitution prohibits " 'cruel *and* unusual' punishment," while the California Constitution prohibits " '[c]ruel *or* unusual' punishment."

13

(*People v. Baker* (2018) 20 Cal.App.5th 711, 723 (*Baker*).) " 'As a result, we construe the state constitutional provision "separately from its counterpart in the federal Constitution." ' " (*Ibid.*)

### a. California Constitution

"A punishment is cruel or unusual in violation of the California Constitution if 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.] Three techniques are employed to make this determination: first, we examine the nature of the offense and/or the offender with particular regard to the degree of danger both present to society; second, compare the challenged penalty with the punishments for more serious offenses in California; and third, compare the challenged penalty with the punishments prescribed for the same offense in other states." (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1145.)

Additionally, our inquiry involves "great deference to the Legislature." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.) "A defendant has a 'considerable burden' to show a punishment is cruel and unusual [citation], and '[o]nly in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive.' " (*People v. Meneses* (2011) 193 Cal.App.4th 1087, 1092–1093.)

Examining the record under the three techniques demonstrates this is not a rare case. As for the nature of the offender, Vasquez argues he was sexually assaulted by his older brother, he worked full time prior to his incarceration, he has no criminal record, he sought treatment for addiction to pornography, and he was assessed as presenting a below average risk of reoffending. For the nature of the offenses, Vasquez claims counts 4 through

14

6 did not involve force or duress, and counts 7 through 11 and 16 involved minimal force or duress.

We find these claims unpersuasive based on our discussion above and the trial court's findings that Vasquez's offenses involved a high degree of callousness, he took advantage of a position of trust and confidence, each victim was particularly vulnerable, the offenses were carried out with planning, and Vasquez used harmful matter to induce his lewd acts. Further, Vasquez ignores the abhorrent and continuous nature of his offenses. As detailed above, Vasquez engaged in substantial sexual conduct with two children under 10 years old, his abuse of J.M. occurred multiple times a week for years, and to groom his victims he repeatedly showed pornography to all three of them. Indeed, " 'sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people.' " (*Baker, supra,* 20 Cal.App.5th at p. 725.)

Turning to the comparison to more serious offenses in California, Vasquez relies on the punishments for a single count of various forms of homicide. But Vasquez's sentence is based on nine counts, and " '[t]he penalties for single offenses . . . cannot properly be compared to those for multiple offenses.' " (*People v. Christensen* (2014) 229 Cal.App.4th 781, 808.)

Vasquez also cites the punishments for nine counts of pimping or pandering a child under 16 (maximum of 24 years; §§ 266h, subd. (b)(2), 266i, subds. (a) & (b)(2), 1170.1, subd. (a)), human trafficking of a minor by persuasion (maximum of 33 years and 4 months; §§ 236.1, subd (c)(1), 1170.1, subd. (a)), and human trafficking of a minor by force (maximum of 135 years to life; §§ 236.1, subd (c)(2), 669, subd. (a)). However, Vasquez fails to address the "One Strike" law, enacted in section 667.61, which was the basis for his challenged sentence.

The One Strike law is an alternative, harsher sentencing scheme for certain enumerated sex offenses committed under specific circumstances. (*In re Vaquera* (2024) 15 Cal.5th 706, 712.)  As the offenses or circumstances increase in seriousness or number, the One Strike law mandates increasing punishments from 15 years to life to life without the possibility of parole. (§ 667.61.)  It also mandates consecutive sentences for qualifying offenses. (§ 667.61, subd. (i).)  In fact, the One Strike law mandated consecutive 25-year-to-life sentences for each of Vasquez's lewd acts, which would have resulted in a total sentence of 225 years to life.  (§ 667.61, subds. (c)(4), (e)(4), (i), (j)(2).)[6]  Had Vasquez's conduct been more serious, such as binding a victim or committing forcible rape, he would have faced life without the possibility of parole.  (§ 667.61, subds. (c)(4), (e)(4) & (5), (j)(1), (*l*), (n)(1).)  As courts have observed, "the punishment under the One Strike law 'is precisely tailored to fit crimes bearing certain clearly defined characteristics.' " (*People v. Reyes* (2016) 246 Cal.App.4th 62, 89.)  We agree with that assessment, and the punishments cited by Vasquez do not convince us that his sentence is disproportionate.

Finally, regarding punishment for analogous crimes in other states, Vasquez acknowledges that three states (Idaho, Florida, and Utah) authorize a life sentence for a single comparable offense.  He then claims that to his knowledge, no other state imposes a mandatory sentence exceeding 100 years for nine counts of forcible lewd acts on a child under 14.  Vasquez fails to show disproportionality on this ground because the cited sister state

---

[6]    Although that sentence was mandated under the terms of the statute, Vasquez's 15-year-to-life sentences under section 667.61, subdivision (b) were authorized because the People chose not to plead allegations bringing Vasquez within the higher sentencing option.  (*In re Vaquera, supra,* 15 Cal.5th at pp. 724, 726.)

sentences contradict his claim, and he provides no authority to support his assertion about other states' sentencing schemes. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418.)

In sum, we do not find Vasquez's sentence for his lewd acts so disproportionate to his crime that it shocks the conscience or offends fundamental notions of human dignity.

### b. *Federal Constitution*

"There is considerable overlap in the state and federal approaches" because " 'both standards prohibit punishment that is "grossly disproportionate" to the crime or the individual culpability of the defendant.' " (*Baker, supra,* 20 Cal.App.5th at p. 733.) The federal analysis starts with " 'comparing the gravity of the offense and the severity of the sentence,' " and "[o]nly in the rare case in which this threshold comparison leads to an ' "inference of gross disproportionality" ' do we proceed" further. (*Ibid*.)

For the reasons discussed above, we do not see an inference of gross disproportionality under this threshold inquiry. Vasquez has therefore failed to show that his sentence is cruel and unusual under the federal Constitution.

Returning to our ineffective assistance of counsel standard, our analysis above precludes Vasquez from establishing his trial counsel was prejudicially deficient in failing to raise his excessive punishment claim. We therefore affirm Vasquez's sentence on counts 4 through 11 and 16.

17

## IV. DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

DATO, Acting P. J.

DO, J.